UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHERRY L. SHAROS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case Number: 14-1274-CJP |
| vs. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | **PETITIONER'S BRIEF** |
| SECURITY, ) | |
| ) | |
| ) | |

**PETITIONER'S BRIEF**

**STATEMENT OF THE CASE**

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g) of the Social Security Administration's (SSA) final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d). After a hearing, an Administrative Law Judge (ALJ) denied Plaintiff's application. Tr. 25-39. The Appeals Council then denied Plaintiff's request for review of the ALJ's decision on September 23, 2014. Tr. 1-6. As such, the ALJ's decision stands as SSA's final decision for purposes of judicial review. 20 C.F.R. § 404.981. Plaintiff's Complaint was filed in this Court on November 12, 2014.

**STATEMENT OF THE RELEVANT FACTS**

I. <u>Plaintiff's Testimony and Work History</u>

Plaintiff obtained her GED and worked as a police dispatcher in the 1970's (Tr. 47). During the 1980s and 1990s, she stayed home to raise her children (Tr. 49). From approximately 1998 to 2004, Plaintiff worked for her husband's lawn service as a secretary (Tr. 67-68). From about

2002-2004 Plaintiff was very depressed and suffered from anxiety (Tr. 69). She had trouble sleeping at night and would sleep all day (Tr. 68-69). She rarely left the house and could not talk to clients on the phone.(Tr. 51)

She was terminated in 2004 because she was unable to answer the phone or get invoices out in a timely manner (Tr. 67-68). Her husband testified that Plaintiff suffered from night terrors which kept her up at night (Tr.68-69). During the period from 2004 to 2009, if Plaintiff did not sleep after 2 days, she would hallucinate (Tr. 72). She was embarrassed to discuss her mental health problems with her doctor, however, her husband did report it to Dr. Fozard (Tr. 72)

Plaintiff stopped driving in 2005 due to anxiety from a minor accident (Tr. 71). From 2004 to 2009, Plaintiff stopped going to most family events and social functions (Tr. 57, 70-71). She could not be in a big crowd (Tr. 57). She rarely cooked and could not do housekeeping, laundry or shopping (Tr. 61-62). Plaintiff could not stand for more than 10-20 minutes and could not walk more than 4 blocks without pain (Tr. 59-60, 73).

A vocational expert testified that give a hypothetical of Plaintiff's limitations, a person would not be able to return to Plaintiff's past position (Tr. 79).

II. Medical and Other Evidence

Plaintiff had a history of mental illness. In the 1975, she was hospitalized for a suicide attempt and received Electro Convulsive Therapy (Tr. 50, 471) Medical records indicate that she was prescribe psychotropic medication as far back as 1985. Plaintiff's records from St. Elizabeth's Hospital prior to 1992 were destroyed (Tr. 564). However, Memorial Hospital records for Plaintiff date back to 1985 when Plaintiff fractured her ankle and required surgery (Tr. 580). She suffered from nerve pain following the fracture and continued to suffer pain through most of her life. The Memorial Hospital records indicate that in 1985, Plaintiff was

taking a prescription for Valium at the time of her accident (Tr. 583). Plaintiff had the rod and screws removed from her ankle in 1986. Records indicate that Plaintiff was being prescribed Tegretol, a mood stabilizer, also used to treat nerve pain in 1988, 1991, and 1992 and that Elavil, an antidepressant, was being prescribed in 1991 and 1992 (Tr. 371, 342, 386). In 1992, Plaintiff had a hysterectomy. The records do not indicate what symptom was being treated with Tegretol. From 2005 to 2010, records indicate that Plaintiff was being prescribed Valium or Elavil, as well as Amitriptyline (Tr. 371, 384, 397, 399, 402, 403, 435, 471). Although a note from 2005 indicated that Amitriptyline was prescribed for neuropathy (Tr. 492), Dr. Fozard recommended to Plaintiff's psychiatrist that Amitriptyline be prescribed for Plaintiff's sleep issues in 2013 (Tr. 792).

### III. ALJ's Decision

The ALJ found that through the date late insured, the Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months. Tr. 13.  As such, the ALJ found she did not have a severe impairment or combination of impairments. Tr. 13. Based on this finding, the ALJ found the claimant was not under a disability, as defined in the Social Security Act, from October, 2004 through September, 2010, her alleged onset through the late last insured.  Tr. 16.

Notably, the ALJ found the only medically determinable impairment to be history of left ankle fracture and hypertension.  Tr. 13. In her initial application, Plaintiff included generalized anxiety disorder and major depression as reasons she was unable to work. Tr. 14.  The ALJ found that regarding her mental impairments, the medical evidence did not support the presence of a medically determinable mental impairment prior to the date last insured.  Tr. 15. As such, the ALJ did not include Plaintiff's mental impairments when considering whether Plaintiff was

disabled. Because the ALJ found Plaintiff did not have a severe impairment or combination of impairments, he did not consider step four or step five of the sequential evaluation process for determining whether Plaintiff was disabled. 20 CFR 404.1520(a).

## STANDARD FOR DISABILITY

The Plaintiff is considered disabled only if she demonstrates an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In particular, the Plaintiff must show that her physical or mental impairments "are of such severity that she is not only able to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" Id.

The Agency applies the foregoing statutory standard by way of a five-step sequential analysis. 20 C.F.R. § 404.1520. In the present case, the severity of Plaintiff's medical impairments, or combination of impairments, evaluated at steps two and/or three are at issue. The ALJ did not proceed to step four or five of the analysis regarding Plaintiff.

At step two it must be determined whether medical evidence establishes a physical or mental impairment or combination of impairments of sufficient severity as to be the basis of a finding of inability to engage in any substantial gainful activity.  An impairment or combination of impairments is not severe if it does not significantly limit the physical or mental ability to do basic work activities. (20 C.F.R. 404.1521).

Here, the ALJ found Plaintiff's mental impairments were not supported by the treatment records, and thus, not medically determinable prior to the date last insured. Tr. 16.  Therefore, Plaintiff's mental issues were not considered when determining the severity of her impairments regarding her ability to perform basic work activities.

## STANDARD OF REVIEW

An ALJ's factual findings are conclusive if they are based on substantial evidence. 42 U.S.C. § 405(g).  The amount of evidence the courts require to support the ALJ's conclusion is "more than a mere scintilla" but less than the "preponderance of evidence." Richardson v. Perales, 402 U.S. 389, 401 (1971).  A district court can reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards or the record did not include substantial evidence to support the ALJ's decision.  42 U.S.C. § 405(g).  The district court must review the entire record to see if it contains substantial evidence supporting the agency's decision, but the court cannot decide facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ.  Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004).

## STATEMENT OF ISSUES TO BE DECIDED

I. <u>Whether the Administrative Law Judge's finding of non-disability is supported by substantial evidence.</u>

In the present case, the ALJ found that claimant last met the insured status requirements of the Social Security Act on September 30, 2010. At step one, the ALJ found that Petitioner was not engaged in any substantial gainful activity during the period of her alleged onset, October 31, 2004 through her date last insured, September 30, 2010 (Tr. 13).

At step two, the ALJ found that, through date last insured, Petitioner had a medically determinable impairment and history of left ankle fracture and hypertension. (Tr. 13). However,

the ALJ also found that Petitioner did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months (Tr. 13). The ALJ dismissed Petitioner's claim of mental impairment, finding no medical signs or laboratory findings to substantiate a medically determinable mental impairment through the date last insured (Tr. 16).

The ALJ's decision details assessments from Dr. Johnson, her psychiatrist, and Dr. Fozard, her primary care doctor (Tr. 15-16). The ALJ gave both doctor's opinions no weight because he stated that there were no treatment records for mental health prior to 2010 (Tr. 16). What is notably absent from the ALJ findings are any mention of the consistent prescriptions for psychotropic medication for Petitioner from 1985 through her death (Tr. 11-16). Indeed, throughout Dr. Fozard's notes, Petitioner's medication for depression, anxiety, and sleep disturbance underwent several changes or adjustments. (See Medical and Other Evidence above)

The ALJ finding makes no reference to the Psychiatric Review Technique completed by Dr. Howard Tin. Dr. Tin based his review on the December 21, 2010 hospital records, Dr. Johnson's records indicating a diagnosis of major depressive disorder with psychosis, and Dr. Fozard's records. The diagnosis of major depressive disorder with psychosis was made three months after the date last insured. In addition, he reviewed Petitioner's treating physician records from 2005 to October, 2011 and found that Dr. Fozard had diagnosed Petitioner with depression. The reviewer noted that the treating physician's notes indicate that Petitioner was diagnosed "Bi-Polar By History that began in December, 2010". However, Dr. Fozard's notes do not indicate the onset date of Bi-polar disorder anywhere in his notes. No medical source statements were reviewed by Dr. Tin. He concluded that Petitioner did have a medically diagnosed impairment

that could be expected to produce some limitations and deemed Petitioner generally credible (Tr. 554).

Dr. Fozard's medical source statement also indicates that Petitioner was diagnosed with <u>chronic</u> depression, (Tr.789) which would be consistent with her prescription history. The ALJ gave no weight to either Dr. Johnson's or Dr. Fozard's opinions because their records showed "no abnormalities in claimant's lower left ankle or mental functioning" (Tr. 16). The decision excludes any evidence that would support a finding of mental impairment and is clearly erroneous.

> Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected. *Kasarsky,* 335 F.3d at 543; *Brindisi v. Barnhart,* 315 F.3d 783, 786 (7th Cir.2003).
>
> <u>Indoranto v. Barnhart</u>, 374 F.3d 470, 474 (7th Cir. 2004)

To ignore medical records which document Petitioner's prescriptions for psychotropic medications for well over five years prior to Petitioner's DLI, flies in the face of logic. The length of time that Petitioner was prescribed these medications and the adjustments made to them was not insignificant, but rather substantial evidence of mental impairment. Substantial evidence is "...more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (Richardson v. Perales, 402 U.S. 389 (1971). At the very least the record of prescriptions should have triggered the ALJ to inquire further regarding Petitioner's mental condition prior to her DLI. That record, along with the family members' statements indicates not an inconsistency but an incomplete record. The ALJ's findings are based on an incomplete record and, in addition, refer primarily to observations following the DLI, ignoring any statements or observations of Petitioner's mental status prior to her date last insured.

> A well-settled proposition regarding social security disability hearings is that "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 860 (7th Cir.1978). *See Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988); *Cannon v. Harris,* 651 F.2d 513, 519 (7th Cir.1981).

Thompson v. Sullivan, 933 F.2d 581, 585 (7th Cir. 1991)

In addition, the ALJ made no mention of the PRT conclusions other than that he considered opinion evidence in accordance with 20 CFR 404.1527 and SSRs 96-2p through 96-7p. (Tr. 14). Dr. Tin concluded that Petitioner had several medically determinable impairments that did not precisely satisfy the diagnostic criteria in Section 12.04 – Affective Disorders and in Section 12.06 – Anxiety Disorders (Tr. 545, 547). The ALJ is required to address the weight given the PRT and cannot ignore the opinions.

One purpose of SSR 96-6p, among others, is to emphasize the following longstanding policies and policy interpretations:

1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review.
2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.

SSR 96-6p

Petitioner's prescription history from her treating physician of over five years, observations of family members and the PRT form relevant evidence which might be adequate to support a finding of disability but at the least should have triggered some investigation as to why Petitioner was medicated for mental health issues for a good portion of her adult life. The SSA has addressed this issue in its rulings:

> Requirements for Recontacting Treating Sources

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion. SSR96-5p.

The ALJ's finding of non-disability, when considering the entire record, is not supported by substantial evidence. The decision is void of any evidence that contradicts a mental impairment. While it is incomplete as far as medical documentation of depression and anxiety, there is no evidence on the record that contradicts that Petitioner suffers from mental impairments.

II. <u>Whether it was legal error to omit evidence of Petitioner's prescribed medications, requiring remand.</u>

In a similar case, an ALJ dismissed a claim of depression based on lack of medical evaluation, clinical findings, diagnoses, or treatment related to depression or any other mental impairment. The District Court noted that two physicians reported that Plaintiff was taking medication used to treat depression. The Court stated that the omission was significant in that in suffering from some degree of depression, the ALJ could not rely solely on the medical-vocational guidelines to determine the existence of disability.

> We therefore find that the ALJ was remiss in failing to further develop and address a clear gap in the record regarding plaintiff's mental status or even to acknowledge the relevant evidence of plaintiff's prescribed medications. The ALJ's failure to meet his affirmative obligations in this respect constitutes legal error and requires the court to remand the case. *Cf. Vega v. Astrue,* 2009 WL 961930 (S.D.N.Y. Apr. 6, 2009) (remanding disability case to ALJ for further development of mental health records).

<u>Calzada v. Asture</u>, 753 F. Supp. 2d 250, 275 (S.D.N.Y. 2010)

The Court noted that the absence of any supporting evidence suggested a deficiency in the record. See also <u>Rose v. Barnhart</u>, No. 01 CIV. 1645 (JSM), 2003 WL 1212866, at *4 (S.D.N.Y.

Mar. 14, 2003) (Where the ALJ focused entirely on the absence of contemporaneous medical evidence and the case was remanded to fully develop the record.)

III.  <u>Whether, based on Plaintiff's mental impairments as well as those found by the ALJ, if Plaintiff is capable of performing her past work, either as she performed it or as it is generally performed in the economy</u>

As the ALJ did not find the impairment or combination of impairments to be severe, he never reached step four and step five regarding Plaintiff. However, as such a finding is not supported by substantial evidence, step four and five will briefly be addressed.

The Plaintiff's functional capacity is used at step four to determine if Plaintiff is capable of performing her past work, either as she performed it or as it is generally performed in the economy. 20 C.F.R. §§ 404.1520(a)(4)(iv), 1560(b)(2). At step five, the functional capacity is used to determine whether she can perform a significant number of other jobs. If she is capable of either, she will be found not disabled. 20 C.F.R. § 404.1520(f)(g). When applicable, the Agency may show that a claimant is capable of performing a significant number of jobs by relying on the Medical-Vocational Guidelines (the grid rules) in 20 C.F.R. pt. 404, sub. P, app. 2. Here, the grid rules are not applicable because Plaintiff's impairments are significantly mental.

Plaintiff's past relevant work, for purposes of her residual functional capacity assessment, is her work from approximately 1998 to 2004, when Plaintiff worked for her husband's lawn service as a secretary (Tr. 67-68).  Her job duties involved answering the telephone, and general office duties.  It was primarily sitting with a certain amount of walking and standing is often necessary in carrying out job duties. Per 20 C.F.R. § 404.1567, this would be considered sedentary work. Further, her duties required little or no judgment and simple duties that she learned on the job in a short period of time and would be considered unskilled work per 20

C.F.R. § 404.1568.  Importantly, her primary impairments to her work were mental.  She was markedly limited in her ability to ask for help and interact with coworkers and clients.

During that time, from about 2002-2004 Plaintiff was very depressed and suffered from anxiety (Tr. 69).  While she managed to continue her secretarial duties through her depression for two years, she was forced to stop in 2004 due to her sleep issues and anxiety.  She was terminated from her position in 2004 because she was unable to answer the phone or get invoices out.  (Tr. 67-68).  She rarely left the house and could not talk to clients on the phone.(Tr. 51).

Plaintiff was incapable of performing her work as a secretary, due to her issues with anxiety, night terrors, and depression.  These mental impairments would also prevent her from performing secretarial duties in any capacity generally performed in the economy.  In order to perform work as a secretary, she would need to be able to interact with people, answer the telephone, make sure things were done timely, and be rested and alert.  Her mental and physical impairments directly cause her inability to perform such tasks.  For purposes of step four, Plaintiff would be unable to perform her past unskilled work, either as she performed it or as it is generally performed in the economy. 20 C.F.R. §§ 404.1520(a)(4)(iv), 1560(b)(2).

At step five, the Agency may rely on the Medical-Vocational Guidelines (the grid rules) to show that a claimant is capable of performing other work.  However, unlike for physical RFCs, there is no set of grid rules for mental RFCs. Plaintiff was 51 years old at the time of her disability and had her GED.  However, her mental impairments markedly limited her in her social interactions.  Because of those issues, she could not do any simple unskilled job for purposes of step five.

## CONCLUSION

The ALJ's finding of non-disability, when considering the entire record, is not supported by substantial evidence. The decision is void of any evidence that contradicts a mental impairment. While it is incomplete as far as medical documentation of depression and anxiety, there is no evidence on the record that contradicts that Petitioner suffers from mental impairments. Therefore, Plaintiff respectfully requests the Court to enter judgment reversing the ALJ's denial of disability benefits or remanding the matter to complete the record.

RYNEARSON, SUESS, SCHNURBUSCH
& CHAMPION L.L.C.


By:   /s/ Debbie S. Champion
      Debbie S. Champion, #6200693
      Attorney for Plaintiff
      500 N. Broadway, Suite 1550
      St. Louis, Missouri  63102
      314-421-4430 / 314-421-4431 (FAX)
      dchampion@rssclaw.com